UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELERO HENDRIX, a.k.a. ELROY HENDRIX,

                    Petitioner,          04-CV-6086

          v.                             **DECISION
                                         and ORDER**
CALVIN WEST,
Superintendent,

                    Respondent.
_____

## INTRODUCTION

Petitioner Elero Hendrix ("Petitioner" or "Hendrix") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court. Petitioner claims the following six grounds for habeas relief: (1) the trial court erred in conferring with a sworn juror with neither Petitioner nor his counsel present; (2) fingerprint evidence was untimely disclosed and improperly allowed at trial; (3) the indictment against him was unreasonably broad; (4) there was insufficient evidence to support his conviction for first degree robbery; (5) the trial court allowed improper identification testimony; and (6) he was denied effective assistance of appellate counsel. As an alternative to habeas relief, Petitioner requests discovery of certain grand jury testimony.

For the reasons set forth below, the Court finds that Petitioner's claims are either not cognizable or without merit.

Hendrix's § 2254 petition is therefore dismissed, and his request for discovery is also dismissed.

## BACKGROUND

Between August 13 and August 21, 1998, someone entered Public School Number Five in Rochester, New York, and took a small sum of money from the cafeteria. (See Trial Transcript ("Tr.") at 243, 525-33.) In the process, the cafeteria sustained physical damage. (See Id.) On August 20, 1998, Daisy Miller ("Miller") accompanied Petitioner to the apartment of Pando Yolevich ("Yolevich"), where Petitioner unsuccessfully attempted to sell Yolevich a television. (Tr. at 271, 336-37.) According to Yolevich, the man who had accompanied Miller to his apartment returned later that day and robbed him at knife-point. (Tr. at 273-77.) However, Yolevich could not positively identify Petitioner as his assailant. (Tr. at 273-77, 324.)

Petitioner was arrested in connection with both the school break-in and the Yolevich robbery. Although defense counsel objected that each incident should be handled separately, the Monroe County Court joined all of the charges against Petitioner into one trial. (Petition for Habeas Corpus ("Petition") at 46-47.) On October 6, 1999, Petitioner was convicted of first degree robbery, second degree assault, and fourth degree grand larceny in relation to the Yolevich robbery; and third degree burglary and fourth degree criminal mischief in relation to the school break-in.

(Petition at 4-5; Answer in Opposition to Petition for Habeas Corpus ("Answer") at 1-2.) Petitioner was sentenced as a persistent felony offender, receiving twenty-five years to life imprisonment on the robbery count and lesser concurrent terms on the other charges. (Answer at 2.)

On direct appeal, Petitioner's appellate counsel argued the following claims: (1) the trial court erred in conferring with a sworn juror outside the presence of both Petitioner and trial counsel; (2) the trial court failed to conduct an adequate inquiry of a sworn juror who had indicated apprehension due to her status as foreperson; (3) there was insufficient evidence to support Petitioner's conviction for third degree burglary; (4) the date range given in the indictment for the school-related charges was unreasonably broad; and (5) Petitioner's sentence was harsh and excessive. (See Appendix of State Court Records, Received in the Docket May 28, 2004, ("App.") C.) In a *pro se* supplemental appellate brief, Petitioner added the following claims: (6) the trial court improperly joined the charges against him; (7) the trial court erred when it allowed the prosecution to amend the indictment; (8) the trial court allowed improper identification testimony; (9) the trial court improperly allowed untimely fingerprint evidence; and (10) he was denied a fair trial and due process through "the cumulative effect of errors." (See Petition at 7.)

The Appellate Division, Fourth Department ("Appellate Division"), upheld Petitioner's conviction. See People v. Hendrix, 292 A.D.2d 815 (4th Dept. 2002). Although the Appellate Division rejected on the merits Petitioner's claims one, two, four, five, six, and seven, it found the remainder to be unpreserved for appellate review pursuant to New York Criminal Procedure Law § 470.05(2). See Id. The New York Court of Appeals denied leave to appeal. See People v. Hendrix, 98 N.Y.2d 651 (2002).

Petitioner then moved for a writ of error coram nobis, claiming ineffective assistance of appellate counsel. (See App. N.) The Appellate Division denied Petitioner's motion, see People v. Hendrix, 306 A.D.2d 957 (4th Dept. 2003), and the Court of Appeals denied leave to appeal. See People v. Hendrix, 1 N.Y.3d 573 (2003). This habeas corpus petition followed.

**DISCUSSION**

**I.    Standard of Review**

In reviewing a state prisoner's habeas corpus petition pursuant to 28 U.S.C. § 2254, a federal district court makes an independent determination as to whether the petitioner is in custody in violation of his rights under the Constitution or any laws and treaties of the United States. Coleman v. Thompson, 501 U.S. 722, 730 (1991), reh'g denied, 501 U.S. 1277 (1991). A federal court does not function as an appellate court when it reviews a state prisoner's habeas petition, and it therefore does

-4-

not review matters within the jurisdiction of the state or review rulings and decisions of state trial and appellate courts. Rather, the court determines whether the proceedings in state court amount to a violation of federal constitutional rights. Id. Federal review of a state court conviction is limited to errors of federal constitutional magnitude which denied a criminal defendant the right to a fundamentally fair trial. Cupp v. Naughton, 414 U.S. 141, 144 (1973).

In cases where the petitioner is in state custody, the habeas court may not grant relief unless the challenged state court conviction was

> contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or...
>
> based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2). "Clearly established" federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions "as of the time of the relevant state-court decisions." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is contrary to clearly established federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme

Court precedent and arrives at a result opposite to" that of the Supreme Court. Id. at 405.

A state court decision is an "unreasonable application" of Supreme Court precedent if it

> [i]dentifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts...[or] unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply[,] or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 407.

This standard applies even if the state court decision was a summary affirmation of the conviction that did not explicitly reject any federal claim, as long as the decision necessarily determined the claim. Sellan v. Kuhlman, 261 F.3d 303 (2d Cir. 2001).

Further, an "application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). A habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Typically, this means that federal habeas claims must have been included in both the petitioner's appeal to the state's

intermediate appellate court and in an application for permission to appeal to the state's highest court. O'Sullivan, 526 U.S. at 848. Failure to exhaust may be excused, however, if the petitioner shows cause for the default and prejudice arising therefrom. Wainright v. Sykes, 433 U.S. 72, 87-88 (1977).

## II. **The trial court's conference with a juror was not improper**

During Petitioner's trial, after the jury had been excused for the day and left the courtroom, the trial judge stated the following to Petitioner, his counsel, and the prosecuting attorney:

> I would just note for the record, that the foreperson did approach me and ask me what the duties of a foreperson are. I did explain to her that she would have a verdict sheet, that she would be asked the question, and just have to answer with what the verdict was that the jurors agreed on. She indicated some apprehension, and asked why it had to be her. I explained to her the rules under Criminal Law do require – in a criminal case do require that she is the foreperson. I don't know if you want me to change that on Monday [when the trial was to resume] or if that's fine. She seemed to be accepting of it, just apprehensive.

(Tr. at 507.) Petitioner claims that he was denied due process because, during the exchange between the trial judge and a juror described above, neither he nor his counsel was present. (See Petition at 11.) This claim is without merit.

A criminal defendant has a due process right to be present for trial proceedings "to the extent that a fair and just hearing would be thwarted by his absence and to that extent only." Snyder v. Massachusetts, 291 U.S. 97, 108 (1934); see United States v.

-7-

_Gagnon_, 470 U.S. 522, 526 (1985). Further, a defendant has a right to have counsel present during all "critical" stages of criminal proceedings. _See_ _Montejo v. Louisiana_, 129 S.Ct. 2079, 2085 (2009). Proceedings are "not critical stages" when there is "minimal risk" that defense counsel's absence at such stages "might derogate" from the defendant's right to a fair trial. _United States v. Wade_, 388 U.S. 218, 228 (1967).

In the "proceeding" at issue in the instant case, the trial judge clarified with a sworn juror the procedural requirements attached to serving as foreperson. There is no indication that opposing counsel was present during this exchange, and the trial judge further gave Petitioner's counsel the option to amend her answer/instructions to the juror at the next available opportunity. (_See_ Tr. at 507.) Petitioner's right to a fair and just hearing was therefore not thwarted by his absence from this procedural clarification, nor was his right to a fair trial derogated in any way by his counsel's absence. _See_ _Wade_, 388 U.S. at 228; _Snyder_, 291 U.S. at 108. To the contrary, the presence of either Petitioner or his counsel would have been superfluous. Accordingly, this claim is dismissed.

### III. **Petitioner's claim regarding fingerprint evidence is not cognizable on federal habeas review**

In Petitioner's second claim, he contends that he was denied a fair trial by the relatively late disclosure of certain fingerprint evidence, and that the trial court erred when it failed

to preclude that evidence or give an adverse inference instruction to the jury. (See Petition at 13.) This claim is not cognizable by this Court.

When a petitioner fails to preserve a claim under state law, the state courts are prevented from reviewing that claim, and federal courts are therefore precluded from considering it on habeas review unless the petitioner can show cause for the default and prejudice resulting from his failure to preserve the issue for appeal. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wainwright, 433 U.S. at 81-87. Here, the Appellate Division found Petitioner's claim regarding fingerprint evidence to be unpreserved for appellate review. See Hendrix, 292 A.D.2d at 816 (citing C.P.L. § 470.05(2)). Petitioner does not dispute this finding, nor does he attempt to demonstrate cause and prejudice for his procedural default. His claim is therefore not cognizable on federal habeas review.

In any event, Petitioner's claim is without merit. Citing Brady v. Maryland, 373 U.S. 83 (1963), Petitioner argues that he was denied his constitutional rights when certain fingerprint evidence connecting him to the school break-in was disclosed by the prosecution - and allowed by the county court - less than a week prior to the commencement of his trial. (See Petition at 13-15; Reply to Answer in Opposition to Petition for Habeas Corpus ("Reply") at 15-16.) However, the delayed disclosure of evidence covered by Brady is not a constitutional violation "unless there is

a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial." United States v. Coppa, 267 F.3d 132, 144 (2d Cir. 2001); see Leka v. Portuondo, 257 F.3d 89, 100 (2d Cir. 2001). If the defendant receives the evidence in time for its effective use at trial, there is no Brady violation. See Coppa, 267 F.3d at 144; Leka, 257 F.3d at 100.

In the instant case, Petitioner and his counsel knew from very early on that there was fingerprint evidence linking Petitioner to the school break-in. (See Pre-Trial Conference, Aug. 20, 1999, ("Conf.") at 3.) The police lifted seven fingerprints of value from the school crime scene, and Petitioner's trial counsel had copies of all of them well before trial. (Wade Hearing, July 16, 1999, at 22-23; Conf. at 6-7.) Petitioner's claim arises from the fact that, although the police initially indicated that only one of the seven fingerprints of value matched Petitioner, they asserted less than a week before trial that, instead, six matched him. (See Conf. at 3-4; Petition at 13-14.)

However, as the trial judge noted, Petitioner's fingerprint expert had not yet reviewed any of the evidence against him when the additional fingerprint matches were disclosed. (Conf. at 8-9.) Rather, Petitioner's expert was scheduled to examine the fingerprint evidence the following week, and Petitioner therefore did not have to re-perform any preparatory work. (Id.) Accordingly, the trial judge admitted the additional fingerprint evidence, noting that she would allow defense counsel additional

preparatory time during trial if that became necessary. (Id.) Contrary to Petitioner's assertions, the trial judge qualified the admission of this evidence by instructing the jury that they could draw an adverse inference against the testimony of the prosecution's fingerprint experts.[1]

Under these circumstances, assuming *arguendo* that the additional fingerprint evidence is indeed <u>Brady</u> information, Petitioner reasonably received it in time for its effective examination at trial. See <u>Coppa</u>, 267 F.3d at 144; <u>Leka</u>, 257 F.3d at 100. Further, especially considering the trial judge's adverse inference instruction, there is no "reasonable probability that earlier disclosure of the evidence would have produced a different result at trial." <u>Coppa</u>, 267 F.3d at 144; see <u>Leka</u>, 257 F.3d at 100. Therefore, disclosure of the additional fingerprint evidence was not untimely under the meaning of <u>Brady</u>.

## IV. <u>The date range in Petitioner's indictment was sufficiently specific</u>

Petitioner's indictment accused him of committing crimes related to the school break-in "between August 13, 1998 and August 21, 1998." (<u>See</u> App. D at 88-89.) In Petitioner's third claim, he argues that this date range was unreasonably broad,

---

[1] The trial judge, in charging the jury concerning expert testimony regarding fingerprints, included in that charge, ". . . you have heard testimony regarding the failure to file a report regarding other prints, other than the print lifted from the glass. You may, if you wish, draw an adverse inference against the testimony based on that failure to file those reports." <u>See</u> Tr. at 652.

denying him the opportunity to sufficiently prepare his defense. (See Petition at 15; Tr. at 29.)  This claim is without merit.

There are two main constitutional requirements for an indictment: "first, that it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, that it enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Resendiz-Ponce, 549 U.S. 102, 108 (2007) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)); see DeVonish v. Keane, 19 F.3d 107, 108 (2d Cir. 1994), cert. denied 513 U.S. 841 (1994).  An indictment need only state the time and place of a charged crime "in approximate terms." United States v. Frias, 521 F.3d 229, 235 (2d Cir. 2008).

In United States v. Ford, 435 F.3d 204, 216 (2d Cir. 2006), the Second Circuit found an indictment to be sufficiently specific even though it averred that the illegal activity took place sometime during a nearly five-month period.  More precision was not required, the court found, because the indictment notified the defendant of the "core of criminality" to be proven.  See id. Petitioner's case is comparable.  As they appear in Petitioner's indictment, the charges related to the school break-in accuse Petitioner of doing the following between August 13 and August 21, 1998: (1) knowingly entering or remaining unlawfully in School Number Five with intent to commit larceny; (2) intentionally damaging a filing cabinet belonging to the Rochester City School

District; and (3) stealing money from the School District.  (See App. D at 88-89.)   In following Ford, the Court finds the indictment notified Petitioner of the "core of criminality" that must be proven against him by the prosecution.  See Ford, 435 F.3d at 216.   Accordingly, the eight-day time frame accompanying the accusations contained in the indictment gave Petitioner sufficient notice to prepare his defense.

## V.  Petitioner's claim that there was insufficient evidence to support his conviction for first degree robbery is unexhausted

In his petition for a writ of error coram nobis, Petitioner argued that he received ineffective assistance of appellate counsel, claiming that appellate counsel declined to argue that Petitioner's conviction for first degree robbery was against the weight of the evidence.  (See App. N at 260.)  In his petition for a writ of habeas corpus before the Court, Petitioner argues that there was insufficient evidence to support his conviction for first degree robbery.  (Petition at 18.)  Petitioner cites Wilson v. Senkowski, 2003 WL 21031975 (S.D.N.Y. May 7, 2003), contending that his claim is exhausted because a weight of the evidence claim can be broadly interpreted to also raise a sufficiency of the evidence claim.  (Petition at 19.)

However, Petitioner's reference to his coram nobis petition is inappropriate.  First, a weight of the evidence claim is purely an issue of state law not subject to federal habeas review.  See, e.g., Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) ("a writ of habeas corpus cannot be used to review the weight of evidence"),

aff'd sub nom. Craig v. Hecht, 263 U.S. 255 (1923); Cummings v. Burge, 581 F. Supp. 2d 436, 451-52 (W.D.N.Y. 2008) (holding that a weight of the evidence claim "does not raise a federal claim cognizable on habeas review"). Tying his sufficiency claim to a weight of the evidence claim is therefore unpersuasive. Second, a coram nobis petition only covers ineffective assistance of appellate counsel and is not the appropriate procedural vehicle for exhausting claims properly raised on direct appeal. See, e.g., Johnson v. Walker, 74 F.Supp.2d 287, 300 (W.D.N.Y. 1999) (including claim of ineffective assistance of trial counsel in coram nobis petition did not exhaust claim for habeas corpus purposes).

On direct appeal, Petitioner did not raise a sufficiency of the evidence claim related to his conviction for first degree robbery. (See Petition at 6-7.) The state courts therefore did not have the opportunity to fully evaluate Petitioner's claim, and it is unexhausted. See 28 U.S.C. § 2254(b)(1)(A); O'Sullivan, 526 U.S. at 845. As stated supra, unexhausted claims are not cognizable on federal habeas review.

## VI. Petitioner's claim regarding identification testimony is not cognizable on federal habeas review

Petitioner's fifth claim asserts that the trial court allowed improper identification testimony from witnesses Daisy Miller and Officer Richard Quartaert. (Petition at 19-20.) However, the Appellate Division found this claim to be unpreserved for appellate review. See Hendrix, 292 A.D.2d at 816 (citing C.P.L. § 470.05(2)). Petitioner does not dispute this finding, nor does

he attempt to demonstrate cause and prejudice for his procedural default.  His claim is therefore not cognizable on federal habeas review.  <u>See</u> <u>Edwards</u>, 529 U.S. at 451 (2000); <u>Wainwright</u>, 433 U.S. at 81-87.

**VII.  <u>Petitioner was not denied effective assistance of appellate counsel</u>**

**A.  The state court decisions regarding Petitioner's assistance of appellate counsel are entitled to post-AEDPA deference on habeas review**

Petitioner raises several issues in support of his claim that he received ineffective assistance of appellate counsel.  As an antecedent to these issues, however, Petitioner addresses the standard the Court should use in evaluating his claim.  The entirety of the Appellate Division's decision in Petitioner's motion for a writ of error coram nobis reads as follows:  "Motion for writ of error coram nobis denied."  <u>People v. Hendrix</u>, 306 A.D.2d 957 (4th Dept. 2003).  The Court of Appeals denied Petitioner's application for leave to appeal in a decision that reads, "Denied."  <u>People v. Hendrix</u>, 1 N.Y.3d 573, (2003).  Based on the brevity of these decisions, Petitioner argues that there is no way to determine if the state courts decided his motion on the merits, and that this Court should therefore review his claim with the level of deference for state court decisions in place prior to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  (<u>See</u> Petition at 2-3.)  This argument is without merit.

The AEDPA deferential review of state court judgments established in 28 U.S.C. § 2254 is dependent on the federal claim having been "adjudicated on the merits" by the state court. Torres v. Berbary, 340 F.3d 63, 68 (2d Cir. 2003) (quoting Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001)). Without that adjudication, the deferential standard does not apply, and the Court applies pre-AEDPA standards, reviewing "de novo the state court disposition of the petitioner's federal constitutional claims." Id. However, nothing in the phrase "adjudicated on the merits" requires the state court to have explained its reasoning process. Sellan, 261 F.3d at 311. A decision that simply states Petitioner's coram nobis petition is "denied" is an adjudication on the merits when there is "no basis for believing that the Appellate Division rejected the claim on non-substantive [i.e. procedural] grounds." Id. at 314.

In response to Petitioner's coram nobis petition, the People's answer focused exclusively on the merits. (See App. O.) No procedural issues were raised. (See id.) As a result, following Sellan, there is "no basis" for believing that the Appellate Division's decision was based on anything other than the merits. Sellan, 261 F.3d at 314. Thus, Petitioner's ineffective assistance of counsel claim is reviewed according to post-AEDPA standards.

**B. Standards for effective assistance of appellate counsel**

The Fourteenth Amendment guarantees a criminal defendant the assistance of counsel in his first appeal as of right. Evitts v.

Lucey, 469 U.S. 387, 388 (1984) (citing Douglas v. California, 372 U.S. 353, 356-57 (1963)).  This necessarily entails the right to effective assistance of appellate counsel.  Evitts, 469 U.S. at 397.  In general, effective assistance of appellate counsel is evaluated according to the same standards as effective assistance of trial counsel.  Frederick v. Warden, Lewisburg Correctional Facility, 308 F.3d 192, 197 (2d Cir. 2002).  These standards require that an attorney render "reasonably effective assistance." Strickland v. Washington, 466 U.S. 668, 687 (1984).

To demonstrate constitutional ineffectiveness, the defendant must first show that counsel's performance was deficient.  Id. at 687.  In making this determination, the court must "determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Id. at 690.  In gauging deficiency, the court must be "highly deferential" to counsel's chosen actions, must consider "all the circumstances," must make every effort "to eliminate the distorting effects of hindsight," and must operate with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 688-89.

Generally, deficiencies in counsel's performance do not warrant setting aside the judgment in a criminal proceeding unless they are prejudicial to the defense.  A habeas petitioner must demonstrate that there is a "reasonable probability" that, but for the deficiency, the outcome would have been different.  McKee v.

<u>United States</u>, 167 F.3d 103, 106 (2d Cir. 1999) (quoting <u>Strickland</u>, 466 U.S. at 688). If an attorney's error has no effect on the judgment, the error does not result in the denial of effective assistance of counsel and therefore is not a violation of the Sixth Amendment. <u>Strickland</u>, 466 U.S. at 691.

Further, appellate counsel does not have a constitutional duty to raise and argue every non-frivolous issue requested by a defendant. <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983). *A fortiori*, counsel has no obligation to raise a claim that could properly be deemed frivolous. Moreover, as the Supreme Court stressed in <u>Jones</u>, 463 U.S. at 751, counsel must apply his or her professional judgment to the task of identifying the issues most likely to succeed on appeal. Often there are only a few such issues, and a *per se* rule requiring counsel to argue every viable issue would hamstring counsel in forcefully arguing the appeal. <u>Id.</u> at 752-53.

An appellate counsel's failure to raise a claim on appeal, or his decision not to do so, will therefore amount to ineffective assistance only when it is "outside the wide range of professionally competent assistance." <u>Claudio v. Scully</u>, 982 F.2d 798, 805 (2d Cir. 1992) (quoting <u>Strickland</u>, 466 U.S. at 690). That standard is breached when "no reasonably competent attorney could have missed the...claim," <u>Id.</u>; when a "decision not to raise the claim cannot be viewed reasonably as a strategic decision," <u>Id.</u> (citing <u>Jones</u>, 463 U.S. at 753); or when "counsel omitted significant and obvious issues, while pursuing issues that were

clearly and significantly weaker." <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994).

### C.  The stipulated record on appeal contained all information Petitioner requested into the stipulated record on appeal

In letters to his appellate counsel, Petitioner requested that counsel include multiple items in the stipulated record on appeal. (App. D at 59-60, 62, 64-65.)  Petitioner contends that appellate counsel deficiently neglected to include several of these items in the stipulated record.  (Petition at 21-22.)  Petitioner further contends that this incomplete record ". . . precluded Full and Fair consideration of petitioner's claims on Appeal."  (Id. at 21.)

Every item Petitioner wished to have included in the stipulated record on appeal was, in fact, accomplished.  (<u>Compare</u> App. D at 59-60, 62, 64-65, <u>with</u> App. D at 70.)[2]  Petitioner indicates that the trial transcript pages he requested are not listed.  (Petition at 21-22.)  However, these pages are included in the "Book of Stenographic Minutes, Volume I," which was filed with the Monroe County Clerk on May 16, 2000, is listed in the stipulated record, and was available to the Court.  (<u>See</u> App. D at 70.)

Further, the Appellate Division dismissed Petitioner's claim regarding fingerprint evidence because it was unpreserved pursuant to C.P.L. § 470.05(2).  <u>See</u> <u>Hendrix</u>, 292 A.D.2d at 816.  Section

---

[2]Appellate counsel did not stipulate to the grand jury testimony of Officers Richard Quartaert and Richard Fantanza as requested.  (<u>See</u> App. D at 60, 70.)  However, counsel could not stipulate to such testimony because it does not exist.  <u>See</u> Section VIII below.

470.05(2) requires defendants to preserve issues for appeal by objecting to them at the proper time during trial. Therefore, contrary to Petitioner's argument, the Appellate Division did base its decision on a complete appellate record.

### D. Appellate counsel was not required to include claims from Petitioner's *pro se* supplemental brief in the main appellate brief

Petitioner contends that appellate counsel was deficient, in that counsel declined to include arguments from Petitioner's *pro se* supplemental brief in the main appellate brief. (Petition at 22-23.) This argument is without merit for two reasons. First, it is well established that appellate counsel is not required to raise every non-frivolous issue requested by his client. See Jones, 463 U.S. at 751. Courts defer considerably to appellate counsel's professional judgment regarding the quality of arguments available and the quantity to present on appeal. Id. at 751-53. Second, as Petitioner notes in his claim, the issues appellate counsel declined to argue in fact reached the Appellate Division through Petitioner's *pro se* supplemental brief. The Appellate Division considered these issues, rejecting some on the merits and finding the remainder to be procedurally barred. See Hendrix, 292 A.D.2d at 815-16; Petition at 7. There is no reason to conclude that the outcome would have been different if appellate counsel had made the same arguments in his brief. Strickland, 466 U.S. at 691.

**E.  Petitioner did not receive ineffective assistance when appellate counsel "lifted" an argument from a previous unrelated case**

Petitioner claims that appellate counsel was deficient when he "copied" an argument from a brief he had written for an unrelated case and "pasted" that argument into the brief for Petitioner's direct appeal.  (See Petition at 23.)  This claim is without merit. If counsel has developed an argument on a point of law, and he feels that the argument is relevant and sound, it is unnecessary to redevelop it if similar circumstances arise in a future case. Reusing legal arguments is not *per se* "outside the wide range of professionally competent assistance."  See Strickland, 466 U.S. at 690.

**F.  Appellate counsel was not ineffective for declining to argue that Petitioner's conviction for first degree robbery was against the weight of the evidence**

Petitioner contends that his conviction for first degree robbery was against the weight of the evidence.  (Petition at 27-28.)  Therefore, he argues, the Appellate Division likely would have dismissed his conviction on that count pursuant to People v. Bleakley, 69 N.Y.2d 490, 495 (1987) ("[i]f it appears that the trier of fact has failed to give the evidence the weight it should be accorded, then the intermediate appellate court may set aside the verdict").  Accordingly, Petitioner claims that appellate counsel was ineffective when he declined to challenge the weight of the evidence related to the robbery conviction.  (Petition at 26-28.)  This claim is without merit.

Under New York law, which the Court must consider here in evaluating an issue's appellate strength, see, e.g., Aparicio v. Artuz, 269 F.3d 78, 96 (2d Cir. 2001) (applying New York law to explain the futility of a potential appellate claim), intermediate appellate courts must give "great deference" to a jury's decision. Bleakley, 69 N.Y.2d at 495. Because they see and hear witnesses, the jury is the primary evaluator of "issues of credibility, as well as the weight to be accorded to the evidence presented." See People v. James, 35 A.D.3d 762, 763 (2d Dept. 2006) (citing People v. Gaimari, 176 N.Y. 84, 94 (1903); People v. Sorrentino, 12 A.D.3d 1197, 1197 (4th Dept. 2004). The jury's determination, therefore, should not be disturbed unless it is "clearly unsupported by the record." James, 35 A.D.3d at 763.

In Petitioner's case, the jury had considerable support in the record when it convicted him of first degree robbery. Daisy Miller testified that she and Petitioner went to Pando Yolevich's apartment on August 20, 1998, and that Petitioner attempted to sell Yolevich a television for $100. (Tr. at 335-37.) When Yolevich declined to purchase the television, Miller took Petitioner to her daughter's house to see if she would be interested in buying it. (Tr. at 337-38.) Miller further testified that, when they discovered that her daughter was not home, Petitioner indicated that he would return to Yolevich's apartment and re-offer the television at a reduced price. (Id.) Miller saw Petitioner return to Yolevich's apartment. (Tr. at 338.)

Yolevich, who was seventy-nine at the time of Petitioner's trial, was unable to positively identify Petitioner as his assailant. (Tr. at 324.) However, he did testify that Miller brought a man to his apartment, and that the man offered to sell him a television. (Tr. at 271.) He further testified that the same man returned later, offering to sell him the television at a reduced price, and that the man subsequently robbed him at knife-point. (See Tr. at 271-77.)

Given this evidence, the jury's finding that Petitioner was guilty of first degree robbery was not "clearly unsupported by the record." See James, 35 A.D.3d at 763. Accordingly, there is no merit in Petitioner's claim that appellate counsel was deficient for failing to challenge the weight of the evidence on this count.

**G.  Appellate counsel was not ineffective for declining to argue that the trial court erred in allowing additional fingerprint evidence**

Petitioner claims that appellate counsel was ineffective for failing to argue that the trial court erred in admitting fingerprint evidence disclosed less than a week before trial. (Petition at 28.) As explained above in Section III, Petitioner reasonably received this evidence in time for its effective examination before trial. See Coppa, 267 F.3d at 144; Leka, 257 F.3d at 100. Because the trial court did not err, Petitioner was not denied effective assistance because his appellate counsel declined to raise such a claim on appeal.

**H.    Appellate counsel was not ineffective for declining to argue that Petitioner's burglary conviction must be dismissed absent a conviction for larceny**

Although Petitioner was charged with petit larceny in connection with the school break-in, the trial judge ultimately dismissed this count. (<u>See</u> Tr. at 550.)  Based on this dismissal, Petitioner claims that there is insufficient evidence to support his conviction for third degree burglary, as the indictment charges that he unlawfully entered School Number Five with intent to commit larceny. (Petition at 45.)  Petitioner argues that if the prosecution was unable to prove that he committed larceny, then the people necessarily could not prove that he committed burglary. (<u>See</u> id.)  Petitioner further claims that his appellate counsel was ineffective for declining to raise this issue on appeal. (<u>See</u> Petition at 31.)  These claims are without merit.

The trial judge in Petitioner's case was correct when she noted that "the crime of burglary is separate and distinct from the act of larceny." (Tr. at 553.)  The prosecution must only prove that a burglar unlawfully entered a building with the intent to commit a crime, not that he unlawfully entered and then actually carried out the crime he intended. <u>See</u> <u>Dunaway v. United States</u>, 170 F.2d 11, 12 (10th Cir. 1948) ("The crime of burglary is complete with the act of breaking and entering the building with intent to steal although the intended theft may be frustrated or abandoned") (citing <u>Morgan v. Devine</u>, 237 U.S. 632, 638-39 (1915)); <u>In re Andrew R.</u>, 29 A.D.3d 321, 323 (1st Dept. 2006) (noting that

burglary is complete when you enter or remain unlawfully with intent to commit a crime, whether or not you in fact commit a crime).  In Petitioner's case, the prosecution had the burden to prove that Petitioner entered School Number Five with the intent to commit larceny, not that he actually committed larceny.  The dismissal of Petitioner's petit larceny charge did not affect the question of third degree burglary, and appellate counsel was therefore not ineffective when he declined to argue that it did affect it.

### I.    Appellate counsel fairly presented before the Court of Appeals every argument previously presented to the Appellate Division

Petitioner states that he instructed appellate counsel to include every argument presented to the Appellate Division in his application for leave to appeal to the Court of Appeals, but that appellate counsel failed to do so.  (Petition at 36-45.)  Because of this failure, Petitioner claims that appellate counsel was ineffective for neglecting to present to the Court of Appeals all of the issues that the Appellate Division reviewed, leaving the omitted claims unexhausted for habeas review.  (See id.)  Although the failure to raise every issue presented to the Appellate Division to the Court of Appeals does not in itself constitute ineffective assistance of counsel, see Atkins v. Miller, 18 F.Supp.2d 314, 321 (S.D.N.Y. 1998), Petitioner's appellate counsel did fairly present all of Petitioner's claims before the Court of Appeals.

The "mere inclusion" of briefs submitted to the Appellate Division is not enough to alert the Court of Appeals of a petitioner's claims. See Brown v. Senkowski, 152 Fed.Appx. 15, 18 (2d Cir. 2005). If a petitioner argues a particular claim in his application for leave to appeal, but makes only "passing reference to possible other claims" in attached briefs, he therefore has not fairly presented those other claims before the state court for the purposes of exhausting a habeas corpus claim. See Jordan v. Lefevre, 206 F.3d 196, 198-99 (2d Cir. 2000). However, if a petitioner clearly states in his application that he is "pressing all of the claims raised in the attached brief," then the court is properly alerted, and the claims in the attached brief are fairly presented. See id. The dispositive point is whether the reference to attached briefs clearly indicates additional claims for review, or if it could "just as easily" be a reference to additional reasons for reviewing the claim raised in the application. See Ramirez v. Attorney General of State of New York, 280 F.3d 87, 97 (2001). See generally Baldwin v. Reese, 541 U.S. 27, 31-32 (2004) (courts with discretionary review powers, who carry heavy workloads, should not have to add to their burden by reading through lower court briefs "in every instance").

In Petitioner's case, appellate counsel highlighted two arguments in his application for leave to appeal to the Court of Appeals, and then he added the following: "Additionally, the Appellant respectfully requests that leave be granted to review the

additional issues raised by Appellant in his Brief, as well as those raised in his pro se Brief, which are incorporated herein by reference." (See App. I.) This statement clearly indicated that there were further issues, included in attached briefs, that appellate counsel alerted the Court of Appeals to review. Under Ramirez, therefore, the briefed issues were fairly presented to the Court of Appeals. See Ramirez, 280 F.3d at 97. As those issues included everything presented before the Appellate Division, Petitioner's claim is without merit.

### J. The trial court properly joined Petitioner's charges into one trial

Prior to trial, Petitioner moved to have the charges related to the school break-in severed from the charges related to the Yolevich robbery. (Petition at 46.) The trial court denied this motion, and the Appellate Division concurred that the charges were properly joined pursuant to C.P.L. § 200.20(2)(c). See Hendrix, 292 A.D.2d at 815. Petitioner claims that this was error. (Petition at 45-46.) As a federal court does not act as an appellate court on habeas review, and therefore does not evaluate the propriety of joinder in Petitioner's case under C.P.L. § 200.20(2)(c), the Court must determine if joinder amounted to a violation of Petitioner's federal constitutional rights. Coleman, 501 U.S. at 730. Under those standards, Petitioner's claim is without merit.

Federal law acknowledges the propriety of joining counts in one indictment where they are the same or similar in character.

See Fed. R. Crim. P. 8(a); United States v. Urlacher, 979 F.2d 935, 937 n.2 (2d Cir. 1992).  In this case, federal law agrees with New York state law.  See C.P.L. § 200.20(2)(c) (offenses are joinable when they are the same or similar in law).  Although joinder is not intended to result in "substantial" prejudice to the defendant's right to a fair trial, see Fed. R. Crim. P. 14; Zafiro v. United States, 506 U.S. 534, 538 (1993); United States v. Werner, 620 F.2d 922, 928 (2d Cir. 1980), a lower court's determination that joinder does not present a risk of prejudice is "virtually unreviewable." See United States v. Stewart, 433 F.3d 273, 314-315 (2d Cir. 2006). The prejudice demonstrated must therefore be so severe that "conviction constituted a miscarriage of justice," and the denial of the motion to sever "constituted an abuse of discretion."  See id.

Petitioner states that he was able to provide an alibi for the school break-in, but that he was not willing to testify regarding the Yolevich robbery.  (Petitioner 46.)  Petitioner therefore contends that the only reason he did not testify is that his charges were joined, and that his failure to testify resulted in substantial prejudice before the jury.  (Id. at 46-47.)  However, although a defendant's right to testify at trial is well-established, so is his ability to waive that right.  Chang v. United States, 250 F.3d 79, 82 (2d Cir. 2001).  The decision of whether or not a defendant will testify at trial is ultimately a matter of trial strategy between the defendant and his counsel.

United States v. Systems Architects, Inc., 757 F.2d 373, 375 (1st Cir. 1985).  It was therefore not a "miscarriage of justice" when joinder led Petitioner to choose not to testify.  See Stewart, 433 F.3d at 314-315.  The trial court did not err, and appellate counsel was not ineffective for declining to claim that it did err.

### K.  The trial court properly allowed amendment of Petitioner's indictment

Petitioner's indictment originally charged two "seventh" counts.  (See App. D at 88-89.)  Each accused Petitioner of fourth degree criminal mischief, but the "second seventh" count averred that Petitioner stole "a sum of United States currency" from the Rochester City School District.  (Id.)  The prosecution declared this a "clerical error," moving to re-number the "second seventh" count as the eighth count of the indictment, and to change its charge from criminal mischief to petit larceny.  (Petition at 48.) The trial court granted the prosecution's motion.  (Id.)  During trial, defense counsel moved to dismiss the eighth count because it stated that Petitioner stole "currency," whereas testimony indicated that only "loose change" was taken from School Number Five.  (Tr. at 516.)  The prosecution then moved to have the word "currency" changed to "money," and the trial judge granted their motion.  (Tr. at 517.)  Petitioner claims that these amendments denied him sufficient notice of the charges against him.  (Petition at 47.)  This claim is without merit.

An indictment can only be amended through re-submission to the grand jury, "unless the change is merely a matter of form."  See

<u>Russell v. United States</u>, 369 U.S. 749, 770 (1962).  Here, the changes were entirely clerical, altering minor aspects of the indictment that in no way changed the substance of the charges against Petitioner.  In any event, the trial court dismissed the eighth count of Petitioner's indictment before the charges were submitted to the jury for determination.  (<u>See</u> Tr. at 550.) Therefore, no prejudice resulted from the amendments to Petitioner's indictment.

> **L.   Appellate counsel's assistance was not deficient**

Petitioner claims that his appellate counsel acted deficiently, and that this deficiency prejudiced Petitioner's case. (Petition at 50.)  However, as outlined supra, Petitioner has not shown that appellate counsel was deficient and, therefore, the Court need not evaluate whether appellate counsel's actions prejudiced Petitioner.  <u>See</u> <u>McKee</u>, 167 F.3d at 106.

**VIII.** <u>**Petitioner's request for discovery is without merit**</u>

As an alternative to habeas corpus relief, Petitioner requests discovery of grand jury testimony from Officers Richard Quartaert and Richard Fantanza.  (Petition at 59.)  This request is without merit.

Unlike a normal civil litigant in federal court, a habeas petitioner is not entitled to discovery as a matter of ordinary course.  <u>See</u> <u>Bracy v. Gramley</u>, 520 U.S. 899, 904 (1997).  Habeas Corpus Rule 6(a) requires § 2254 petitioners to show "good cause" before being granted discovery.  <u>See</u> <u>Id.</u> at 908.  Here, Petitioner

states only that he has never been granted discovery for the testimony in question. (Petition at 59-60.) Further, Petitioner's trial counsel, the Monroe County District Attorney's Office, and the Monroe County Court have all indicated that Officers Quartaert and Fantanza did not in fact testify before the grand jury in Petitioner's case. (See App. H at 202; App. J at 222-23, 225.) I therefore find no good cause to grant Petitioner the discovery he requests.

## CONCLUSION

For the reasons stated above, Hendrix's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Further, because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. 28 U.S.C. § 2253. Petitioner's request for discovery is denied.

ALL OF THE ABOVE IS SO ORDERED

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          August 3, 2009